**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DISH NETWORK L.L.C.,

   Plaintiff,

  v.

ATLAS ELECTRONICS INC. and
ALAA AL-EMARA, individually and
together d/b/a Atlas Satellite,

and

ISTAR COMPANY and AHMED KARIM,
individually and together d/b/a Istar and
Istar-hd.com,

   Defendants.

Civil Action No.

JUDGE

## COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants Atlas

Electronics Inc. and Alaa Al-Emara (collectively "Atlas Satellite"), and Istar Company and

Ahmed Karim (collectively "Istar").

### Nature of the Action

1. DISH brings this suit for direct, contributory, and vicarious copyright infringement

because Istar is taking broadcasts of television channels exclusively licensed to DISH and is

unlawfully transmitting these channels over the internet throughout the United States on Istar's

service (the "Istar Service") to customers who purchase Defendants' Istar set-top boxes and

account renewals. Defendants know that the Istar Service is providing access to television

channels exclusively licensed to DISH. Istar manufactures, distributes, and sells Istar set-top

boxes and account renewals to resellers in the United States, including Atlas Satellite, with

knowledge that those resellers sell them to users of the Istar Service in the United States ("Service Users"). Istar is liable for direct, contributory, and vicarious copyright infringement. Atlas Satellite is materially contributing to and inducing direct copyright infringement by Istar or a third party.

2.     Defendants demonstrated the willfulness of their infringement by Istar continuing to transmit channels exclusively licensed to DISH and by all Defendants continuing to distribute and sell the Istar Service in the United States, despite multiple demands from DISH that they cease.

## Parties

3.     Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

4.     Defendant Atlas Electronics Inc. ("Atlas"), formerly known as Atlas Satalite Communications Inc., is a Michigan corporation with its principal place of business located at 5640 Schaefer Road, Dearborn, Michigan 48126.

5.     Defendant Alaa Al-Emara ("Al-Emara"), also known as Ali Al-Emara, is an individual residing at 861 Highview Street, Dearborn, Michigan 48128. Al-Emara is the president, treasurer, secretary, and director of Atlas. Al-Emara authorized, controlled, participated in, and received direct financial benefit from the infringing activities of Atlas as

2

alleged herein. The acts Al-Emara engaged in as an agent of Atlas are believed to have been within the scope of such agency.

6.      Defendant Istar Company, also known as Istar Korea Ltd., is an Iraqi Limited Liability Company, license number 2512442, with its principal place of business located at Kurdistan, Erbil, City Center, Nishtiman Bazaar, Iraq.

7.      Defendant Ahmed Karim is an individual, upon information and belief, residing in Iraq. Karim is the CEO, director, and sole shareholder of Istar Company. Karim authorized, controlled, participated in, and received direct financial benefit from the infringing activities of Istar Company as alleged herein. The acts Karim engaged in as an agent of Istar Company are believed to have been within the scope of such agency.

## Jurisdiction and Venue

8.      DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

9.      Atlas Satellite resides in and conducts business in the State of Michigan, and therefore, they are subject to this Court's personal jurisdiction.

10.     Personal jurisdiction over Istar is proper in this Court because they purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business activities within the State of Michigan by transmitting channels exclusively licensed to DISH to users of the Istar Service in the State of Michigan, and supplying Atlas

3

Satellite with Istar set-top boxes and account renewals in the State of Michigan, causing injury to DISH in this State and in this District.

11. In the alternative, personal jurisdiction is proper against Istar under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Istar sells Istar set-top boxes and account renewals to resellers in the United States and Istar transmits channels exclusively licensed to DISH to Service Users in violation of the Copyright Act. This Court's exercise of jurisdiction over Istar is consistent with the Constitution and laws of the United States, DISH's claims arise under federal law, and Istar is not subject to the jurisdiction of the courts of general jurisdiction of any state. Istar's Istar-hd.com website includes a Global Network link that displays a world map of Istar's Sales Network with the approximate location of Atlas Satellite as one of seven distributors and resellers in the United States.



12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Atlas Satellite resides in this judicial district, under § 1391(b)(2) because a substantial part of the events causing DISH's claims occurred in this district, under § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district, and under § 1391(c)(3) because Istar is a nonresident that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

13. DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide. DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

14. DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera Media Network; ARY Digital USA LLC; B4U U.S.; Bennett, Coleman and Company Limited; Hum Network Limited; MBC FZ LLC; International Media Distribution (Luxembourg) S.A.R.L.; MSM Asia Limited; National Communications Services (SMC-PVT.) Limited; Soundview ATN LLC; Soundview Broadcasting LLC; Television Media Network (Pvt) Ltd; TV Today Network Ltd.; Vedic Broadcasting Inc.; and World Span Media Consulting, Inc. (collectively, the "Networks").

15. The Networks' channels include Aaj Tak; Aastha; Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; ARY Digital; ART Cima; ATN Bangla; ATN News; B4U Movies; B4U

Music; CBC; CBC Drama; Dunya TV; Express Entertainment; Express News; Future TV; Hekayat; Hum Masala; Hum Sitaray; Hum TV; Hum World; India Today; LBC; LBCI (a/k/a LDC); MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; Melody Classic; Melody Drama; NTV Bangla; Rotana America; SAB; SET (a/k/a Sony SET); SET MAX; Times Now; and Zoom (collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

16.    DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, over-the-top ("OTT"), internet protocol television ("IPTV"), and internet. DISH's exclusive rights as to the Protected Channels are currently in effect, with the exception of Al Jazeera Arabic News in which DISH's exclusive rights expired on July 31, 2020; ARY Digital in which DISH's exclusive rights expired on April 26, 2021; and MBC1, MBC3, MBC Drama and MBC Kids (the "MBC channels") in which DISH's exclusive rights expired on September 23, 2020.[1] Many of the works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the United States Copyright Office. (See Exhibit 1.) A vast number of additional, unregistered copyrighted works in which DISH holds

---

[1] DISH currently holds the non-exclusive license and right to distribute and publicly perform in the United States all programming aired on the ARY Digital and MBC channels.

6

exclusive distribution and public performance rights also aired on the Protected Channels. (See Exhibit 2.)

17. Defendants are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on those channels in the United States, and DISH has received no compensation from Defendants to do so.

## Istar's Wrongful Conduct

18. Istar distributes, sells, and promotes the Istar Service to resellers in the United States including Atlas Satellite, with knowledge that those resellers are distributing, selling, and promoting the Istar Service to Service Users. Istar also promotes the Istar Service on Istar-hd.com, and distributes, sells, and promotes the Istar Service through their Istar-3d.com website.

19. Istar was founded in July 2006 and is the largest Digital TV Reception equipment manufacturer in Iraq and one of the 10 largest in the Middle East. Istar also promotes itself on Istar-hd.com as providing "engineering consulting services related to communication systems design and analysis, digital, software, and mechanical design services."[2]

20. Istar uses Istar-hd.com to provide software and channel lists for the Istar Service, which include the Protected Channels.

---

[2] See https://istar-hd.com/about.php.



21.     Istar uses Istar-hd.com to provide instructions on how to upgrade software and channels in the Istar Service, which include the Protected Channels.  The instructions include a "Link" where the software and files can be downloaded.



22.     Istar used Istar-hd.com to provide a link to the Istar User Manual which states, "IPTV internet protocol TV its view all popular channels around the world without dish just by internet its subscribe more than 700 channels," and it lists and includes logos and marks of the Protected Channels, including MBC1, MBC3, MBC Drama, and MBC Masr.

8

5.2.1 IPTV internet protocol TV its view all popular channels around world without dish just by internet its subscribe more than 700 channels



23.     Istar-3d.com permits consumers to add Istar set-top boxes and account renewals to a shopping cart, where Istar sells the set-top boxes for $140 to $150, with a 12 month subscription for accessing the channels. Service Users who want to continue to receive the channels after the initial subscription period must purchase a 12 month account renewal for $60.

24.     Istar promotes the Istar Service on their Facebook page located at https://www.facebook.com/ISTAR-satellite-Online-tv-codes-1728010550831510.         Istar's Facebook page includes a video demonstrating the Istar Service and showing the channel guide with Protected Channels MBC1, MBC3, and MBC Drama as seen in the following screenshots:



https://www.facebook.com/permalink.php?story_fbid=2158103237822237&id=17280105508315

10

25.    Istar promotes and provides support for the Istar Service through their YouTube channel at https://www.youtube.com/channel/UCehw8QUPvb_X6Ta4Yy_GcbQ, including the following videos: ISTAR Tutorial upgrade software by USB (with 47,771 views); ISTAR Tutorial download software from website (with 25,853 views); ISTAR Tutorial how to Upgrade Software

by USB (with 64,492 views); ISTAR Tutorial how to rom (with 48,906 views); ISTAR TUTORIAL Media Center (with 11,269 views); ISTAR TUTORIAL Scan Channels (with 50,405 views); ISTAR TUTORIAL HOW TO UPGRADE YOUR SOFTWARE BY HTTP (with 28,518 views); ISTAR Tutorial connect to IPTV (with 109,414 views); ISTAR Tutorial How to Connect to the Internet by (WIFI-LAN) (with 78,142 views).

26.     The Istar Service transmits the Protected Channels to Service Users soon after the original authorized transmission.  Istar, or a third party working under Istar's direction and control, takes broadcasts of the Protected Channels, transfers them to one or more computer servers provided, controlled, and maintained by Istar or the third party, and then the Protected Channels are transmitted to Service Users through OTT delivery.[3]

27.     Istar is directly or vicariously liable for the transmission of the channels on the Istar Service, including the Protected Channels, as shown by providing the software and channel lists for the Istar Service and Istar's responses to notices of infringement stating "I will keep share every channels," "I will keep do this job," "we contacted them to remove those streams.  These channels have been deleted now," and "we contacted the online tv company and they removed the channels."

---

[3] The computer servers transmitting the Protected Channels are hosted by Datacamp Limited and identified by IP addresses: 89.187.171.17; 89.187.171.18; 185.93.0.12; and 185.93.9.13.

28.     Any member of the public with internet access, including Service Users, can receive the Protected Channels by simply doing the following: purchasing an Istar set-top box; powering on the device; connecting it to the internet; and selecting the Protected Channels.

29.     Istar has actual knowledge that the transmission of the Protected Channels on the Istar Service infringes DISH's copyrights. DISH and the Networks sent Istar at least 69 notices of infringement from March 8, 2016 to the filing of this Complaint, demanding that they cease transmitting the Protected Channels identified in the notices. Istar has not responded to any of these notices of infringement since March 25, 2019. Istar provided responses to some of these notices of infringement between May 9, 2016 and March 25, 2019, including:

> a.     On May 9, 2016, Istar responded denying the links to the Protected Channel belong to them, but stating, "we hear from people some of them they using this APP on our Box";
>
> b.     On August 24, 2016, Istar responded denying the server belongs to them, but stating, "this is some clients added this IPTV service on the Box";
>
> c.     On February 24, 2017, Istar responded denying it is their service, but stating, "I checked with the them, they said this Host and this URL not our";

d.      On March 24, 2017, Istar responded denying the Protected Channels belong to them, and stating, "if you send another emails, say bye bye to your Fucking Company";

e.      On November 17, 2017, Istar responded stating, "Fuck you, I will keep share every channels, fuck you, Fuck you";

f.      On December 21, 2017, Istar responded stating, "Fuck you I will keep do this job, Fuck of man";

g.      On March 16, 2019, Istar responded denying the streams of the Protected Channels belong to them, but stating, "Third Party provides them. Such us (Online TV and Matrix TV). So we contacted them to remove those streams. These channels have been deleted now, but there is a cache system, it may take 24 Hours to be eliminated the channels";

h.      On March 25, 2019, Istar responded stating, "we contacted the online tv company and they removed the channels."

30.      DISH and Networks sent at least 89 additional notices to content delivery networks ("CDNs") associated with the Istar Service from March 9, 2016 to the filing of this Complaint, requesting the removal of the Protected Channels. Upon information and belief, at least some of these notices were forwarded to Istar. Even when these CDNs removed the unauthorized content based on Istar's copyright infringement, Istar intentionally interfered with

13

the takedown efforts by, for example, transmitting the Protected Channels from different CDNs or locations.

## Atlas Satellite's Wrongful Conduct

31.    Atlas Satellite distributes, sells, and promotes the Istar Service to Service Users from their place of business located at 5640 Schaefer Road, Dearborn, Michigan 48126.



32.    An investigator visited Atlas Satellite in April 2017 and they stocked and were offering to sell the Loolbox service, among others, that DISH confirmed were distributing and publicly performing the Protected Channels and works that air on those channels in the United States.

33.    DISH sent Atlas Satellite a written demand on April 20, 2017, listing the Protected Channels, enclosing a judgment and permanent injunction against dealers of the Loolbox service, and demanding that Atlas Satellite cease "to distribute, provide, or promote the Loolbox set-top box and service or any other set-top box or service that distributes [DISH's] Protected Channels in the United States."

34.    An investigator visited Atlas Satellite in May 2018 and they stocked and were offering to sell the Istar and Tiger Star services, among others, that DISH confirmed were

14

distributing and publicly performing the Protected Channels and works that air on those channels in the United States. An Atlas Satellite sales representative stated that Atlas Satellite had been a DISH authorized retailer for 20 years and "the IPTV services are hurting their business."

35. DISH sent Atlas Satellite a second written demand on May 30, 2018, listing the Protected Channels, enclosing contempt orders, judgments and permanent injunctions against dealers of several other services that were distributing and publicly performing the Protected Channels and works that air on those channels in the United States, and demanding that Atlas Satellite cease to "distribute, provide, or promote Tiger, Istar, . . . and any set-top box or service that distributes DISH's Protected Channels in the United States."

36. DISH sent Atlas Satellite a third written demand on August 28, 2018, listing the Protected Channels, enclosing a judgment and permanent injunction against dealers of the Tiger service that were distributing and publicly performing the Protected Channels and works that air on those channels in the United States, and demanding that Atlas Satellite cease "to distribute, provide, or promote the Tiger Star set-top box, service plan, RedIPTV and Royal IPTV sections of the Tiger Star service, and any other set-top box or service that distributes DISH's Protected Channels in the United States."

37. An investigator called Atlas Satellite in November 2020 and they confirmed they were offering to sell the Istar Service and another service that DISH confirmed was distributing

and publicly performing the Protected Channels and works that air on those channels in the United States. Atlas Satellite recommended the Istar Service to the investigator.

38. An investigator visited Atlas Satellite in March 2021 and they stocked, were offering to sell, and sold the Istar Service to the investigator. DISH confirmed that the Istar Service purchased from Atlas Satellite in March 2021 distributed and publicly performed the Protected Channels and works that air on those channels in the United States.

39. DISH sent Atlas Satellite a fourth written demand on April 19, 2021, listing the Protected Channels, enclosing judgments and permanent injunctions against dealers of two other services that were distributing and publicly performing the Protected Channels and works that air on those channels in the United States, and demanding that Atlas Satellite cease "to distribute, provide, or promote iStar and all set-top boxes and services that distribute DISH's Protected Channels in the United States."

40. An investigator visited Atlas Satellite on June 17, 2021 and they stocked, were offering to sell, and sold the Istar Service to the investigator. The investigator entered Atlas Satellite and located the Istar display on shelving to the left. The investigator spoke to the clerk and requested the Istar set-top box. The clerk went to the back employee-only storeroom and returned with an Istar set-top box. The clerk opened the box and plugged the Istar set-top box into a television for set-up. A second clerk assisted with the set-up. The clerk told the investigator "he is setting it up." The clerk handed the Istar set-top box to the investigator and said that "it was activated with service for 1 year and that when it expired, he could call or

16

come into Atlas Satellite to renew it." The clerk advised that the Istar set-top box with 1 year of the Istar Service was $185 plus tax and the yearly renewal fee was $60. DISH confirmed that the Istar Service purchased from Atlas Satellite in June 2021 distributed and publicly performed the Protected Channels and works that air on those channels in the United States.

41. An investigator visited Atlas Satellite in July 2021 and they stocked and were offering to sell the Istar Service.

42. Atlas Satellite promotes the Istar Service on their Facebook page located at https://www.facebook.com/AtlasSatelliteINC, including the following posts concerning the Istar Zeed model set-top box and Istar Service that "has 600+ channels including Arabic" and that "Atlas Electronics store . . .offers to the consumer or customer a variety of electronic goods . . . through what's known as EP receiver for online TV reception, in this field Atlas has the latest devices including (i.e.[I]star . . . It is known that Atlas staff has 17 years of experience working in this field."



https://www.facebook.com/AtlasSatelliteINC/posts/2019358071545173

17



نشاطات الغربة الغربة
February 22, 2017 · ☉ ···

Atlas Electronics Multiple options, great facilities and long experience
Atlas Electronics store is one of the well-known stores in Dearborn in terms of
what it offers to the consumer or customer a variety of electronic goods they
need starting from smartphones of various models, types, electronic systems and
Going through what's known as EP receiver for online TV reception, in this field
Atlas has the latest devices including (i.e. star Lulu, Levon) along with surveillance
cameras
Operating according to the latest systems, especially on night surveillance (Phil,
Aj, D) It is known that Atlas staff has 17 years of experience working in this field.

https://www.facebook.com/permalink.php?story_fbid=1778968909088683&id=1000092677494
97

43. Atlas Satellite has actual knowledge that the transmission of the Protected

Channels on the Istar Service infringes DISH's copyrights. Atlas Satellite disregarded DISH's

four written demands identified in paragraphs 29, 31, 32, and 35, and they are continuing to

distribute, sell, and promote the Istar Service.

## CLAIMS FOR RELIEF

## Count I

## Direct Copyright Infringement Under 17 U.S.C. § 501

## Against Istar

44. DISH repeats and realleges the allegations in paragraphs 1-43.

45. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds, or held

during the relevant time period, the exclusive rights to distribute and publicly perform in the

United States, by means including satellite, OTT, IPTV, and internet, the programs that make

up the Protected Channels.

18

46.     The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Egypt, Lebanon, Pakistan, India, and Bangladesh where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

47.     Istar directly infringed DISH's copyrights in violation of 17 U.S.C. § 501 by distributing and publicly performing programs that make up the Protected Channels to Service Users, including the works identified in Exhibits 1-2. The copyrighted programs were transmitted from computer servers controlled by Istar to Service Users who accessed the programs using the Istar Service.

48.     DISH has not authorized Istar to distribute or publicly perform the programs that make up the Protected Channels in any manner.

49.     The infringement of DISH's rights in each program constitutes a separate and distinct act of copyright infringement.

50.     Istar's actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

51.     Unless enjoined by the Court, Istar will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count II

## Inducing and Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501

## Against Istar and Atlas Satellite

52.     DISH repeats and realleges the allegations in paragraphs 1-43 and 45-46.

53.     DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by the unauthorized transmission of these programs to Service Users who access the programs using Defendants' Istar Service.

54.     Defendants materially contribute to this infringement of DISH's exclusive distribution and public performance rights by, among other things, providing Service Users access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to prevent such access. Defendants also induce the infringement of DISH's exclusive distribution and public performance rights by, among other things, creating or expanding the audience for that infringement in the United States.

55.     Defendants sell the Istar Service in the United States providing Service Users access to unauthorized streams of the Protected Channels and the programs that make up

20

the Protected Channels. Service Users simply purchase an Istar set-top box; power on the device; connect it to the internet; and select the Protected Channels.

56. Prior to sale, Atlas Satellite plugs the Istar set-top boxes into a television to set up the Istar Service.

57. Defendants advertise the Istar Service as a means of accessing the Protected Channels. Istar uses Istar-hd.com to provide software and channel lists for the Istar Service, including the Protected Channels. Istar uses Istar-hd.com and its YouTube channel to provide instructions and tutorial videos on how to upgrade software and channels for the Istar Service, including the Protected Channels. Istar's User Manual states "IPTV internet protocol TV its view all popular channels around the world without dish just by internet its subscribe more than 700 channels," and it lists and includes logos and marks of Protected Channels, including MBC1, MBC3, MBC Drama, and MBC Masr. Istar's Facebook page includes a video demonstrating the Istar Service and showing the channel guide with Protected Channels MBC1, MBC3, and MBC Drama. Atlas Satellite uses its Facebook page to advertise that the Istar Service "has 600+ channels including Arabic."

58. Defendants provide material assistance to those directly infringing DISH's exclusive rights by providing the Istar Service for the Protected Channels to be viewed. The Protected Channels are presented to Service Users through the Istar Service.

59. Defendants intend that the Istar Service be used to access the Protected Channels and the programs that make up the Protected Channels, and they promote, encourage, and facilitate using the Istar Service in this manner.

60. Defendants have actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Service Users infringes DISH's exclusive distribution and public performance rights.

61. Defendants can take simple measures to prevent further infringement of DISH's exclusive rights to distribute and publicly perform the programs that make up the Protected Channels, such as removing the Protected Channels from the Istar Service, blocking the Istar Service from accessing servers and URLs that are identified to be streaming the Protected Channels, and ceasing to sell Istar set-top boxes and account renewals in the United States until the Protected Channels are removed from the Istar Service.

62. Defendants' actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

63. Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count III

### Vicarious Copyright Infringement Under 17 U.S.C. § 501

### Against Istar

64.    DISH repeats and realleges the allegations in paragraphs 1-43 and 45-46.

65.    In the alternative, third parties infringed DISH's copyrights in programs that aired on the Protected Channels by acting as the source that was distributing and publicly performing them to Service Users. The copyrighted programs were transmitted from computer servers controlled by the third parties to Service Users that accessed the programs using the Istar Service.

66.    Istar had the legal right and the actual ability to supervise and control the infringing activity of the third parties as shown by their March 2019 responses to notices of infringement stating "we contacted them to remove those streams. These channels have been deleted now," and "we contacted the online tv company and they removed the channels." Istar also had the legal right and the actual ability to supervise and control, and ultimately to prevent, Service Users from using the Istar Service to access the programs that make up the Protected Channels. Istar has failed and refused to take action to stop the infringement of DISH's exclusive rights in the programs that make up the Protected Channels since at least March 25, 2019.

67.    Istar received a direct financial benefit from the distribution and public performance of copyrighted programs aired on the Protected Channels transmitted to Service

23

Users. The availability of the infringing programming attracted and drew consumers to Istar and its distributors and retailers, resulting in an increase in the sale of Istar set-top boxes and account renewals by Istar.

68. Istar infringed DISH's copyrights in violation of 17 U.S.C. § 501. The infringement of DISH's rights in each audiovisual work constitutes a separate and distinct act of copyright infringement.

69. Istar's actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

70. Unless enjoined by the Court, Istar will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A. For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order (including, without limitation, distributors and resellers of the Istar Service), from:

1. transmitting, streaming, distributing, or publicly performing in the United States, with any Istar set-top box, account renewal, or any other device, application, service,

24

or process, any of the Aaj Tak; Aastha; Al Arabiya; Al Hayah 1; ART Cima; ATN Bangla; ATN News; B4U Movies; B4U Music; CBC; CBC Drama; Dunya TV; Express Entertainment; Express News; Future TV; Hekayat; Hum Masala; Hum Sitaray; Hum TV; Hum World; India Today; LBC; LBCI (a/k/a LDC); Melody Classic; Melody Drama; NTV Bangla; Rotana America; SAB; SET (a/k/a Sony SET); SET MAX; Times Now; and Zoom channels (the "Injunction Channels") or any of the programming that comprises any of the Injunction Channels;

2. distributing, selling, providing, or promoting any product or service in the United States, including any Istar set-top box or account renewal, that comprises the whole or part of a network or service for the distribution or public performance of any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels;

3. advertising, displaying, or marketing any Istar set-top box, account renewal, or other service in connection with any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels;

4. inducing or contributing to another's conduct that falls within 1, 2, or 3 above; and

5. selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations.

B. For 164 or more registered works, statutory damages as awarded by the Court up to \$150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

C. For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

D. For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

E. For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F. For an order permanently transferring each domain name that any of the Defendants used in connection with the infringement to DISH.

G. For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

H. For such additional relief as the Court deems just and equitable.

Dated:  September 21, 2021  Respectfully submitted,

By: /s/ Matthew J. Stanczyk
Matthew J. Stanczyk (P39559)
mstanczyk@plunkettcooney.com
**PLUNKETT COONEY, P.C.**
150 West Jefferson, Suite 800
Detroit, MI 48226
Telephone: (313) 983-4823
Facsimile: (248) 901-4040

Stephen M. Ferguson
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, TX 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
**Counsel for Plaintiff DISH Network L.L.C.**