UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DISH NETWORK, LLC,

      Plaintiff,

v.

ISTAR COMPANY and AHMED KARIM,
et al.,

      Defendants.

Case No. 21-12219
Honorable Laurie J. Michelson

---

**ORDER GRANTING IN PART DISH NETWORKS MOTION FOR DEFAULT
JUDGMENT AGAINST AHMED KARIM AND ISTAR COMPANY [29]**

---

DISH Network LLC sued Istar Company and its CEO, Ahmed Karim, for transmitting channels that DISH says are protected by exclusive licenses it holds. DISH brought one count of direct copyright infringement and one count of vicarious copyright infringement against Istar and Karim and brings one count of inducing and materially contributing to copyright infringement against Istar, Karim, and two other defendants. (ECF No. 1, PageID.18–24.) The Court has already entered a judgment and permanent injunction against these other defendants, Atlas Electronics, Inc. and Alaa Al-Emara, per the parties' stipulation. (ECF Nos. 25, 26.)

As for Istar and Karim, after they did not appear in this case, DISH requested a clerk's entry of default as to each of them. (ECF No. 14.) In response, the Court issued a show-cause order directing DISH to explain how Istar was properly served under Federal Rule of Civil Procedure 4. (ECF No. 15.) DISH did so (ECF No. 16), and the Clerk entered default (ECF Nos. 18, 19).

Now, DISH asks this Court for a default judgment as to Istar and Karim on Count I of DISH's complaint. (ECF No. 29.) For the reasons given below, the motion is GRANTED IN PART.

## I. Jurisdiction

The Court must first determine that it has jurisdiction. *See Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *1 (E.D. Mich. Sept. 28, 2016).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as all claims against Istar and Karim arise under federal law. (*See* ECF No. 1, PageID.18–23.)

The Court also finds that it may exercise personal jurisdiction over Istar and Karim.

"While a defendant may waive a personal jurisdiction challenge . . . courts have nonetheless *sua sponte* addressed the issue prior to entering a default judgment." *Ayers v. Receivables Performance Mgmt.*, No. 2:15-cv-12082, 2016 WL 5402962, at *1 (E.D. Mich. Sept. 28, 2016) (citing *Amica Mut. Ins. Co. v. Epplett*, No. 15-10442, 2015 WL 5439946, at *4 (E.D. Mich. Sept. 15, 2015)). To determine whether personal jurisdiction is met in the case of a default judgment, the Court looks to whether the well-pleaded allegations in the complaint, taken as true, and supplemented by affidavits, amount to a prima facie showing of personal jurisdiction. *See Amer. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) ("When the district court finds no need for an evidentiary hearing . . . the burden of

the plaintiff is relatively slight and the district court must consider the pleadings and affidavits in the light most favorable to the plaintiff."). And to establish specific personal jurisdiction in a federal question case, "personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *Ayers*, 2016 WL 5402962, at *2 (quoting *Alixpartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)).

DISH argues Istar and Karim are subject to specific personal jurisdiction in Michigan under the state's long-arm statute and the Due Process Clause because they targeted their infringement towards the state, and alternatively, under Rule 4(k)(2) because they targeted the infringement towards the United States as a whole. (ECF No. 1, PageID.3–4; ECF No. 29-1, PageID.227.)

The Court finds that Michigan's long-arm statute authorizes jurisdiction over Istar and Karim because they transmitted copyrighted works to users in Michigan via the Internet from certain television channels exclusively licensed to DISH, and supplied Atlas Electronics, which is located in Michigan, with set-top boxes and account renewals, thus targeting their infringement towards Michigan customers. (ECF No. 1, PageID.3–4, 7–8, 11–12; ECF No. 29-4, PageID.1017–1021, 1023, 1025–1044.) These actions satisfy three subsections of the Michigan long-arm statute for corporations and individuals, respectively: subsection 1 (transacting business in the state), subsection 2 (causing an act to be done in the state resulting in a tort action), and subsection 5 (entering into a contract for materials to be furnished into the state). *See* Mich. Comp. Laws § 600.705(1)–(2), (5) (for individuals); *id.* § 715(1)–(2),

(5) (for corporations); *see also Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696, 701–08 (W.D. Mich. 2002) (stating that defendant who sold infringing products into the United States including in Michigan triggered the Michigan long-arm statute).

The Court also finds that the Due Process Clause is satisfied. To satisfy due-process requirements for personal jurisdiction, DISH must show that Istar and Karim (1) purposefully availed themselves of the privilege of acting in Michigan or caused a consequence there, (2) DISH's cause of action relates to such activities, and (3) the exercise of jurisdiction is reasonable. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014).

Start with the first prong, purposeful availment. Istar and Karim purposefully availed themselves of acting in Michigan by transmitting exclusively-licensed channels to users in Michigan and selling Istar set-top boxes to Atlas in Michigan. (ECF No. 1, PageID.3–4, 7–8, 11–12; ECF No. 29-4, PageID.1017–1021, 1023, 1025–1044); *see Sony/ATV Music Publ'g LLC v. CAVS USA, Inc.*, No. 3:08–0265, 2009 WL 2177110, at *1, 4–6 (M.D. Tenn. July 21, 2009) (establishing jurisdiction over nonresident karaoke company and its individual officer that sold karaoke downloads and discs in the forum (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002))); *Eight Mile Style, LLC v. Spotify USA, Inc.*, No. 3:19-cv-0736, 2020 WL 1640425, at *6 (M.D. Tenn. Apr. 2, 2020) (establishing jurisdiction over nonresident streaming service that streamed music to users in the forum).

4

Second, the Court finds that DISH's claims are sufficiently related to Istar and Karim's contacts with Michigan to satisfy the second prong of the analysis. The second element does not strictly require a "causal relationship" between a defendant's in-state activities and the litigation, but merely a "connection" that is "close enough." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, 1032 (2021). Here, because Istar and Karim sold set-top boxes to a reseller in Michigan and at least part of the infringement—the unauthorized transmission of the exclusively-licensed channels—occurred in Michigan via the use of these boxes, the connection between Istar and Karim's in-state contacts and the litigation is "close enough" to support personal jurisdiction. *See* (ECF No. 1, PageID.3–4, 7–8, 11–12; ECF No. 29-4, PageID.1017–1021, 1023, 1025–1044); *Sony/ATV*, 2009 WL 2177110, at \*7; *Spotify*, 2020 WL 1640425, at \*7.

Third, the Court finds that the exercise of personal jurisdiction is reasonable. When the first two prongs are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Air Prods. Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007). Istar and Karim have defaulted and therefore the presumption of reasonableness that arises from satisfaction of the first two elements is not rebutted. The Court finds that jurisdiction is reasonable because Istar and Karim advertised their service's global reach, transmitted the exclusively-licensed channels in Michigan, and did business with at least one reseller in Michigan. (ECF No. 1, PageID.3–4, 7–8, 11–12; ECF No. 29-4, PageID.1017–1021, 1023, 1025–1044); *see Donnelly Corp.*, 189 F. Supp. 2d

5

at 712 (finding jurisdiction was reasonable where German auto parts company "enjoyed the advantages of using its business goodwill with contacts in Michigan").

Alternatively, if DISH had not established personal jurisdiction under the Michigan long-arm statute, the Court would have personal jurisdiction over Istar and Karim under Federal Rule of Civil Procedure 4(k)(2), which, for federal claims, establishes personal jurisdiction over a defendant who has been served and "is not subject to jurisdiction in any state's courts of general jurisdiction[.]" *See Lyngaas v. Ag*, 992 F.3d 412, 422 (6th Cir. 2021). Courts have interpreted this provision as establishing jurisdiction based on a defendant's nationwide contacts. *Id.* Istar and Karim are subject to jurisdiction under Rule 4(k)(2) because they made the Istar Service available to users throughout the United States, their activities in the United States and the litigation are sufficiently related, and the exercise of jurisdiction would not be unreasonable based on their decision to target their services to United States customers as a whole. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 4, 7–11 (9th Cir. 2018) (establishing 4(k)(2) jurisdiction over a German company that provided a software-building service over the internet to 156 U.S. customers in several states (cited by *Lyngaas*, 992 F.3d at 422)).

So DISH has shown that the Court has personal jurisdiction over Istar and Karim.

## II. Service of Process

The Court also considers proper service of process. *See Hosn v. Fly Baghdad Airline*, No. 20-13442, 2021 WL 5867312, at *1 (E.D Mich. Dec. 10, 2021). And here,

6

it has been given no reason to believe that Istar and Karim were not properly served.

For both individual and corporate defendants, "courts have applied Rule 4(f)(2)(A) to approve service carried out in accordance with foreign law." *Murtech Energy Servs., LLC v. Comenco Sys., Inc.*, No. 2:13-cv-12721, 2014 WL 2863745, at *7 n.9 (E.D. Mich. June 24, 2014); *see Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, 253 F.R.D. 404, 405 (E.D. Tex. 2008) (approving personal service on company as prescribed by Australian law and stating, "personal service on a corporation in a foreign country is permissible under Rule 4(f)(2)(A) when allowed by foreign law").

DISH served Karim and Istar under Iraqi law and submitted a declaration from an Iraqi investigator and process server who conducted a records search of Istar, which showed Karim as its CEO and Director, and analyzed the requirements for service of process in Iraq under the Iraq Civil Actions Law. (ECF No. 13, PageID.84–85; ECF No. 13-1, PageID.87–162.) The declaration states that the process server served Istar and Karim as prescribed by the Civil Actions Law, Articles 14, 18, 21(7)–(8), by serving them through an employee who agreed to accept service for Istar and Karim at Istar's headquarters in Kurdistan, Iraq. (ECF No. 13, 85–86; ECF No. 13-1, PageID.163–170.) Further, the Court ordered DISH to show cause that service of Istar and Karim was proper pursuant to Rule 4 and found that DISH's explanation satisfied the show-cause order. (ECF Nos. 15, 16.) So

7

the Court finds that Istar and Karim were properly served in Iraq under Rule 4(f)(2)(A) as prescribed by Iraqi law.

### III. Sufficiency of DISH's Allegations

Next, when, as here, a plaintiff seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), it has the burden of establishing both liability and damages. In analyzing liability, the Court accepts as true the well-pled factual allegations of DISH's complaint, draws reasonable inferences from those allegations in its favor, and then asks whether DISH has stated a claim upon which relief may be granted. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010). DISH has satisfied this burden.

DISH requests default judgment against Istar and Karim on Count I for direct copyright infringement. (ECF No. 29-1, PageID.226, 228–234.) "The Copyright Act gives copyright owners exclusive rights to reproduce, prepare derivative works from, distribute, and publicly perform or display a copyrighted work." *Fogerty v. MGM Group Holdings Corporation, Inc.*, 379 F.3d 348, 352 (6th Cir. 2004) (citing 17 U.S.C. § 106). "To the ends of protecting these rights, the Act allows 'the legal or beneficial owner of an exclusive right under a copyright . . to institute an action for any infringement of that particular right.'" *Id.* (citing 17 U.S.C. § 501(b)). A claim of copyright infringement requires proof of: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Id.*

On the first element, DISH argues that by its agreements with certain networks, DISH held the exclusive right to distribute and publicly perform the works shown on the exclusively-licensed channels at all relevant times. (ECF No. 1, PageID.5–6.) The agreements are enough to transfer the specified exclusive rights to DISH. *See* 17 U.S.C. §§ 201(d), 204(a) (authorizing transfer of rights protected under the Copyright Act by signed, written agreement). As the exclusive licensee, DISH may sue Istar and Karim for infringement of its rights under the Copyright Act. *See* 17 U.S.C. § 501(b). Accepting the complaint's well-pleaded allegations as true, DISH has established that it held the exclusive right to publicly perform the works shown on the protected channels in the United States at all relevant times, and that it therefore is a beneficial owner of copyrights in the protected works.

As for the second element, DISH argues that Karim and Istar infringed its copyrights by transmitting without authorization the exclusively licensed channels through their Istar Service. (ECF No. 1, PageID.1–2, 3–4, 6–8, 11–13.) In particular, DISH argues that Istar and Karim take broadcasts or streams of the channels exclusively licensed to DISH and transfer them to one or more computer servers provided, controlled, and maintained by them. (*Id.* at PageID.11.) The channels are then transmitted to Istar and Karim's customers in the United States via the Istar service. (*Id.* at PageID.11–12.) As a result, DISH alleges, Istar and Karim directly infringed its exclusive rights to publicly perform the works airing on the exclusively licensed channels, including 157 works registered with the United States Copyright

Office within three months of the work's first publication. (ECF No. 1, PageID.6, 18–19; ECF No. 29-3, PageID.254–265, 765–939.)

The Court finds that these well-pleaded allegations establish that Karim and Istar infringed DISH's copyrights in works airing on the exclusively licensed channels, thus satisfying the second element of DISH's copyright infringement claim. *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 441-51 (2014) (holding that provider of centralized equipment used to stream broadcast programming to its subscribers infringed content owners' right of public performance). Thus, default judgment will be granted against Karim and Istar on Count I for direct copyright infringement. *See, e.g., DISH Network L.L.C. v. TV Net Sols., LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685351, at *4 (M.D. Fla. Nov. 25, 2014) (granting default judgment and finding copyright infringement based on allegations that defendants transmitted copyrighted programs via similar services).

## IV. Statutory Damages

As for damages, the complaint's allegations are not simply accepted as fact, and so the Court may require a plaintiff prove its damages at an evidentiary hearing. *See McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. Apr. 27, 2011). But such a hearing is not necessary "if sufficient evidence is submitted to support the request for damages . . . or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits." *McIntosh*, 2011 WL 1595150, at *4 (internal

citation omitted). Here, a hearing is not necessary because DISH has proven its damages.

Under the Copyright Act, a copyright owner may recover an award of statutory damages between $750 and $30,000 for infringement related to each work. 17 U.S.C. § 504(c)(1). But if the copyright owner proves that the infringement was willful, a court may "increase the award of statutory damages to a sum of not more than $150,000." *Id.* at § 504(c)(2).

Courts consider several factors in calculating whether to award maximum statutory damages, including the willfulness of the conduct, the expense saved and the profits reaped by the defendant in connection with the infringement, and the revenues lost by the plaintiff. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013).

A court may conclude that infringement was willful from evidence showing that the defendant received notice of its infringement. *See Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d. 800, 809 (E.D. Mich. 2000) (holding that continued infringement following receipt of cease-and-desist letters regarding the infringement demonstrated willfulness). In support of its argument that Istar and Karim were willful, DISH notes that Istar and Karim were provided with 69 notices demanding that they cease transmitting the licensed channels. (ECF No. 1, PageID.12–13; ECF No. 29-3, PageID.253, 268–499.) Istar and Karim responded to some of these notices with profanity and promises to "keep shar[ing] every channel" and to "keep do[ing] this job." (ECF No. 1, PageID.12–13.) Moreover, when Internet

service providers associated with the Istar Service were served with an additional 89 notices, Istar and Karim continued to transmit the exclusively licensed channels from different service providers or locations when the service providers that received the notices removed or disabled the channels. (ECF No. 1, PageID.13–14; ECF No. 29-3, PageID.254, 499–761.) Finally, DISH alleges that Istar and Karim kept transmitting the exclusively licensed channels even after being served with the complaint and continued to transmit the channels up to the time that DISH moved for default judgment. (ECF No. 29-4, PageID.1016–1021, 1025–1044.) The Court finds that Istar and Karim are willful copyright infringers. *See also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) ("Where the defendant has defaulted, willful copyright infringement is proven.").

Along with the willfulness of Istar and Karim's infringement, DISH points to other factors that support its request for maximum statutory damages. DISH argues that the Istar Service was likely highly profitable because Istar and Karim have distributed the exclusively licensed channels on a 24/7 basis since at least March 2016, presumably because doing so is profitable. (ECF No. 29-4, PageID.1017–1021, 1023, 1025–1032.) Indeed, to just one reseller, in one shipment, Istar and Karim sold 300 receivers for $22.60/each and 200 receivers for $18/each, totaling $10,380. (ECF No. 29-3, PageID.763–764.) Plus, Istar and Karim avoided having to pay DISH or the channels directly for this content. But DISH acknowledges that it is unable to quantify Karim and Istar's profits, though this is in part due to Karim and Istar not participating in this lawsuit. As Istar and Karim

12

likely saved money from their infringement by avoiding having to pay licensing fees, and likely generated substantial profits via their infringement, this factor weighs in favor of awarding maximum statutory damages.

DISH has also provided some evidence that Karim and Istar's infringement caused DISH to lose subscription revenues, market share, and price erosion (though DISH also acknowledges some of these things are difficult to quantify). DISH notes that it would cost a consumer about $165 per month to subscribe with DISH and receive all the exclusively licensed channels from DISH's satellite service. (ECF No. 29-5, PageID.1089–1090,1094–1125.) During the most recent 46 months of Karim and Istar's infringement, DISH lost many thousands of subscribers of its programming packages that included the exclusively licensed channels. (*Id.* at PageID.1090–1091, 1126–1127 (under seal).) While DISH presents evidence that Istar and Karim sold 500 Istar set-top boxes to one single reseller in the United States at one single retail location, DISH alleges that Istar and Karim's actual sales and subscriber numbers are likely far higher because Istar and Karim sold their services online and to other resellers. (ECF No. 29-3, PageID.254, 761–764; ECF No. 29-4, PageID.1016.) DISH's large loss of subscribers during the most recent 46 months of Karim and Istar's infringement and the monthly subscription cost to receive the exclusively licensed channels from DISH directly also support increasing the statutory damage award against Karim and Istar.

Though many of the factors certainly favor an enhanced award, "[t]he Court retains broad discretion to determine an appropriate damages figure in each

case." *See AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013) (citing 17 U.S.C. § 504(c)(2); *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 578 (6th Cir. 2007)). "The $150,000 per-work maximum that the Copyright Act provides in cases of willful infringement is simply a possibility, not an assurance." *Howarth v. FORM BIB LLC*, No. 18-CV-7047 (JPO)(SN), 2020 WL 3441030 (S.D.N.Y. May 11, 2020). Here, though Istar and Karim have acted willfully, their conduct does not amount to the "egregious" level often cited by courts before awarding the statutory maximum. *See Warner Bros. Entertainment, Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (evaluating a motion for default judgment, the reviewing court found the conduct at issue was "particularly egregious" and awarded the requested statutory maximum of $150,000 per work); *Getty Images (U.S.), Inc. v. Virtual Clinics,* No. C13-0626JLR, 2014 WL 1116775 (W.D. Wash. Mar. 20, 2014) (noting there was evidence that the defendants had profited over $1,000,000 in the websites they had designed, and that $21,794.00 of that was directly attributable to five websites that posted the two images at issue); *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*, No. 3:14-cv-1929, 2018 WL 4007537, at *9 (M.D. Tenn. Aug. 20, 2018) ("Based upon years of willful infringement, repeatedly disregarding the Court's orders, refusing to provide financial documents or to account for all unauthorized uses, willfully violating the Preliminary Injunction order and failing to pay the sanctions for contempt, no reason exists to be lenient in imposing a statutory damages award against the TriceraSoft Defendants. For these reasons, the statutory maximum damages of

14

$150,000.00 per infringement are appropriately imposed against the TriceraSoft Defendants."). And though DISH states, "[m]aximum statutory damages against Defendants are supported with only 3,103 Istar Users during the most recent 46 months of Defendants' infringement. (46 months multiplied by $165 per month multiplied by 3,103 Istar Users equals $23,551,770)" (ECF No. 29-1, PageID.239), the Court has no way of knowing how many of those users would have subscribed from DISH if Istar were unavailable. Some of the difficulty in ascertaining actual damages is due to Istar's non-appearance in this litigation. But some of it is due to the uncertainty inherent in determining how DISH was harmed by the infringement. And many factors apart from cheaper alternatives lead consumers to stop subscribing to television programming, such as market downturn. *See Clever Covers, Inc. v. Southwest Florida Storm Defense, LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) ("[S]tatutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered."). So the Court will not award DISH the statutory maximum of $150,000 per infringed work.

But recognizing that statutory damages are more than just compensatory, and are intended to have a deterrent effect, the Court will award $100,000 in statutory damages for each infringed work. Thus, the Court finds that DISH is entitled to a statutory damages award of $15,700,000 ($100,000 for each of the 157 works registered within three months of the work's first publication).

## V.    Permanent Injunction

### A.    Against Istar and Karim

The Copyright Act authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Court may grant a permanent injunction when the plaintiff demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

DISH argues that it has been irreparably harmed by Istar and Karim's infringing activity. DISH points to its loss of subscribers and the damage done to its business reputation and goodwill. DISH notes that while it has unquestionably lost subscribers to Istar and Karim's lower-cost Istar Service, the exact amount cannot be easily determined to quantify the harm. (ECF No. 29-1, PageID.238–39, 241–42.) DISH also states that the Istar Service is not subject to the same quality assurance and security protocols, which reflects poorly on DISH because its programming is associated with the service. (*Id.* at PageID.242–243.) Subscribers to the Istar Service might assume that because the quality of the programming distributed through the service is lacking, the same is true of the quality of the programming when it is distributed through DISH. (*Id.*) Based on this, the Court finds that DISH

16

has been irreparably harmed by Istar and Karim's infringing activity, and absent a permanent injunction, DISH is likely to remain harmed in the future.

The Court also agrees that other remedies besides a permanent injunction, such as monetary damages, are not adequate to compensate DISH for the harm that Istar and Karim's service will do to DISH. A permanent injunction therefore is an adequate remedy because it will require Istar and Karim to cease their infringing activity, which will prevent DISH from suffering additional harm, especially harm that cannot be quantified.

The balance of hardships also supports awarding a permanent injunction to DISH. Because of Karim and Istar's infringing conduct, DISH has suffered lost revenue and damage to its goodwill, and it will continue to suffer these losses in the future unless a permanent injunction issues. These are significant hardships, while the only hardship that Karim and Istar stand to endure is the harm that will come to their business when it is ordered to cease violating DISH's copyrights, which deserves no weight in the balancing of hardships. *See Apple Comp., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

For the same reasons, the public interest favors a permanent injunction. The public has an interest in the effectuation of the policy and purpose of the Copyright Act, which is to protect intellectual property rights and encourage the creation of copyrightable works. *See Kidsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986–87 (2016). Issuing a permanent injunction would further this interest. Conversely, the public has no legitimate interest in the continued operation of the

Istar Service. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007).

So the Court will award DISH a permanent injunction against Istar and Karim. *See Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 492 (6th Cir. 2007) ("It is uncontroversial that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction.")

### B. Against Non-Parties

DISH also seeks to enjoin certain non-parties from providing services to Istar and Karim that enable their infringing conduct. The Court will grant the injunction in part, but only as to the third-parties DISH has specifically named and for which DISH has provided evidence that their services allow Istar and Karim to commit infringement of DISH's channels.

Under Rule 65(d), an injunction may bind not only a party to a case but also non-parties that receive "actual notice" of the order and that are acting in "active concert or participation" with an enjoined party. Fed. R. Civ. P. 65(d)(2).

DISH states that Istar and Karim used the domains Istar-hd.com to promote and Istar-3d.com to distribute, sell, and promote Istar set-top boxes and account renewals. (ECF No. 29-1, PageID.246.) They also used domain names to operate the Istar Service and to transmit the exclusively licensed channels, including Stbhostupdate.biz to install and update the software on Istar set-top boxes and Online-validate-api.com for the authorization and authentication of the service, including verification that the user has a valid subscription (together with Istar-

hd.com and Istar-3d.com, the "Offending Domain Names"). (ECF No. 29-4, PageID.1021–1022.) Verisign, Inc. is the registry for Istar-hd.com, Istar-3d.com, and Online-validate-api.com, and Registry Services, LLC is the registry for Stbhostupdate.biz. (ECF No. 29-3, PageID.266–267.)

DISH requests that VeriSign and Registry Services be ordered to disable the domains associated with the Istar Service so that they are inaccessible to the public, transfer the domain names to DISH (including changing the registrar of record to the registrar selected by DISH, at DISH's reasonable expense), and re-enable the domain names once they have been transferred to DISH and are under DISH's control. (ECF No. 29-1, PageID.246–247.) The Court will grant this injunction.

Ordering VeriSign and Registry Services to take these actions would at least temporarily prevent Istar and Karim from distributing the exclusively licensed channels and using the domains to promote and sell the Istar set-top boxes. *See DISH Network, L.L.C v. Dima Furniture Inc.*, No. TDC-17-3817, 2019 WL 2498224, at *9 (D. Md. June 17, 2019) ("Without these domains, his ability to transmit the Protected Channels will be hindered."). And DISH states it provided notice to VeriSign and Registry Services of its request for an injunction ordering them to disable the Istar Service's domains and transfer them to DISH, thereby allowing the entities to object. (ECF No. 29-6, PageID.1128–1129.) The Court finds that VeriSign and Registry Services may properly be bound by an injunction under Rule 65(d)(2)(C) because they are "in active concert or participation" with Istar and Karim's infringing activities, in line with other courts' decisions on this issue. *See,*

*e.g.*, *N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. LTD. Co.*, No. 10-1630 (AKH), 2011 WL 12908845, at *3 (S.D.N.Y. June 24, 2011) (concluding that a nonparty domain registry was bound by the court's injunction); *TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-cv-1489 (DLI) (PK), 2018 WL 7076022, at *8 (E.D.N.Y. Mar. 9, 2018) (recommending the court enjoin nonparties that manage the domain name registries and registrars associated with the streaming of the infringed content).

DISH also requests that the Court order certain third-party Internet service providers (Istqrar for Servers Services Ltd, Worldstream B.V., and Incapsula Inc.) to disable computer servers that Istar and Karim used to unlawfully transmit the licensed channels.[1] (ECF No. 29-1, PageID.244–245; ECF No. 29-4, PageID.1021– 1022, 1045–1067.) Similar to disabling the domain names, DISH states that Karim and Istar will be at least temporarily prevented from distributing the licensed channels through the Istar Service if these servers are disabled. (ECF No. 29-1, PageID.244–245.) And DISH provided the service providers with notice of its request for an injunction requiring them to stop providing certain services to Karim and Istar in support of their infringing activities. (*See* ECF No. 29-6, PageID.1129.)

The Court finds that the service providers would be properly enjoined because of their "active concert or participation" with Karim and Istar's infringing

---

[1] The computer servers that are transmitting or being used in the course of transmitting the Protected Channels as of July 2022 are identified by IP addresses 217.74.16.161; 217.74.16.172; 217.74.16.173; 217.74.16.176; 107.154.137.234; and the IP address of Stbhostupdate.biz. (ECF No. 29-4, PageID.1021–1023, 1045– 1059.)

conduct. *See* Fed. R. Civ. P. 65(d)(2)(C); *see also TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-1489, 2018 WL 7076022, at \*8 (E.D.N.Y. Mar. 9, 2018) (recommending that the court order nonparty "internet service providers and content hosting websites to cease providing hosting services to [the defendant] in relation to its infringement"), *report and recommendation adopted,* No. 16-1489 (E.D.N.Y. Mar. 30, 2018); *DISH Network L.L.C. v. Khalid*, No. H-19-4563, 2021 WL 765709, at \*8 (S.D. Tex. Feb. 23, 2021) (granting injunction to enjoin third-party service providers from supporting Khalid's infringement); *DISH Network, L.L.C. v. Dima Furniture Inc.*, No. TDC-17-3817, 2019 WL 2498224, at \*8 (D. Md. June 17, 2019) (enjoining certain nonparty Internet service providers).

However, to the extent DISH asks the Court to permanently enjoin unidentified third-parties, the Court declines to do so at this time as such an injunction would be overly broad. DISH has not shown that any of these non-identified third parties "have affirmatively acted to 'aid and abet' [Karim and Istar] in evading a prior order or in committing the alleged underlying unlawful conduct." *See BMW of North America, LLC v. Issa*, No. TDC-17-3817, 2020 WL 1325278, at \*6 (D. Utah Mar. 20, 2020); *see also Asia TV USA Ltd. v. Kamran Int'l Trade Ltd.*, No. 17 CV 5057 (FB), 2018 WL 6313215, at \*12 (E.D.N.Y. Sept. 25, 2018), *report and recommendation adopted*, No. 17-CV-5057-FB-CLP, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018). And none of these parties have received notice. As such, the request is premature and without any evidentiary basis, so the Court declines to issue the requested relief at this time.

### III.    Conclusion

For these reasons, DISH's motion for default judgment (ECF No. 29) is GRANTED. It is ORDERED that:

1. Judgment will be entered against Karim and Istar, jointly and severally, in favor of DISH in the total amount of $15,700,000, with interest on this principal amount according to the statutory rate pursuant to 28 U.S.C. § 1961(a).

2. Karim, Istar, and any of their officers, agents, servants, employees, attorneys, or other persons, including all dealers, distributors, and retailers of Istar set-top boxes and account renewals that are acting in active concert or participation with any of the foregoing that receive actual notice of the order, are permanently enjoined from:

>    a) transmitting, streaming, distributing, or publicly performing in the United States, with any Istar set-top box, account renewal, or any other device, application, service, or process, any of the Aaj Tak; Aastha; Al Hayah 1; ART Cima; ATN Bangla; ATN News; B4U Movies; B4U Music; CBC; CBC Drama; Future TV; Hekayat; India Today; LBC; LBCI (a/k/a LDC); Melody Classic; Melody Drama; NTV Bangla; Rotana America; SAB; SET (a/k/a Sony SET); SET MAX; Times Now; and Zoom channels (the "Injunction Channels") or any of the programming that comprises any of the Injunction Channels;

b) distributing, selling, providing, or promoting any product or service in the United States, including any Istar set-top box or account renewal, that comprises the whole or part of a network or service for the distribution or public performance of any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels;

c) advertising, displaying, or marketing any Istar set-top box, account renewal, or other service in connection with any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels;

d) inducing or contributing to another's conduct that is prohibited by subsections (a)–(c) above; and

e) selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of Karim or Istar's infringing operations.

3. To the extent Istqrar for Servers Services Ltd, Incapsula Inc., and Worldstream B.V. provide any form of electronic storage, computer server, website hosting, file hosting (including data center and colocation, primary and backup storage, back-end), domain hosting, domain name registration, privacy protection for domain registration, anonymization for domain registration, proxy, content delivery network ("CDN") services, content acceleration (including traffic

routing, bandwidth, web content optimization, website/data security), advertising (including search based online advertising), social media services, and email services used in connection with any of the activities enjoined under Paragraph 2, they are enjoined from providing such services in connection with any of the activities enjoined under Paragraph 2. This includes but is not limited to Istqrar for Servers Services Ltd disabling the computer servers identified by IP addresses 217.74.16.161; 217.74.16.172; 217.74.16.173; and 217.74.16.176; Incapsula Inc. disabling the computer server identified by IP address 107.154.137.234; and Worldstream B.V. disabling the computer server identified by the IP address of Stbhostupdate.biz. The computer servers and IP addresses may be reassigned to other customers after they have been disabled and are no longer being used in connection with any of the activities enjoined under Paragraph 2.

4. VeriSign, Inc. and Registry Services, LLC (registries of the domain names Stbhostupdate.biz, Online-validate-api.com, Istar-hd.com, and Istar-3d.com) within one week of receiving this Order, shall

   a) disable, implement a hold, or otherwise make the websites and any other content located at the domain names inaccessible to the public;

   b) transfer the domain names to DISH, including changing the registrar of record to the registrar selected by DISH at DISH's reasonable expense; and

      c) after the transfer, re-enable the domain names and remove any hold so that DISH may fully control and use the domain names.

5. VeriSign, Inc. and Registry Services, LLC shall disable, implement a hold, or otherwise make the websites and any other content located at the domain names inaccessible to the public on all future domain names used by Karim and Istar

      a) in the course of transmitting any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels on the Istar service or any other service in the United States, or

      b) to distribute, provide, sell, or promote the Istar service or any other service that transmits any of the Injunction Channels or any of the programming that comprises any of the Injunction Channels in the United States, within one week of receiving this Order and a declaration from DISH or its agent stating that the domain names are being used in such a manner. Those domain names shall remain disabled and on hold until further order of this Court, or until DISH provides written notice to the registry or registrar that the domain names shall be re-enabled and any hold removed.

6. Violation of this Order shall subject Karim, Istar, Istqrar for Servers Services Ltd, Incapsula Inc., Worldstream B.V., VeriSign, Inc., Registry Services, LLC,

and all other persons bound by this Order to all applicable penalties, including contempt of Court.

7. The Court shall retain jurisdiction over this action for the purpose of enforcing this final judgment and permanent injunction.

**SO ORDERED.**

Dated: November 4, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE